**Dr. Jerry FALWELL, et al., Plaintiffs,**

**v.**

**The EXECUTIVE OFFICE OF THE PRESIDENT, et al., Defendants.**

**No. Civ.A. 600CV0005.**

United States District Court, W.D. Virginia, Lynchburg Division.

Sept. 14, 2001.

---

Jerry Falwell, Jr., Lynchburg, VA, Larry Klayman, Washington, DC, for Plaintiffs.

John F. Corcoran, U.S. Attorney's Office, Roanoke, VA, John R. Tyler, Anne L. Weismann, Department of Justice Civil Division, Washington, DC, for Defendants.

## MEMORANDUM OPINION

WILSON, Chief Judge.

Plaintiffs, Dr. Jerry Falwell, Liberty Bible Institute, Liberty Baptist Theological Seminary, Liberty University, Liberty Godparent Foundation, Liberty Federation, Moral Majority, Thomas Road Baptist Church, Elim Home for Alcoholics & Drug Addicts, Hope Aglow Prison Outreach, National Liberty Journal, Old–Time Gospel Hour, Listen America, Liberty Alliance, W19BC Television, WRVL Radio, and Mat Staver's Liberty Counsel (collectively "Falwell"), brought this action against defendants, the Executive Office of the President ("EOP") and the Federal Bureau of Investigation ("FBI"), seeking injunctive and monetary relief for alleged violations of the Privacy Act, 5 U.S.C. § 552a, and the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and conspiracy to commit the same. The court has jurisdiction pursuant to 5 U.S.C. §§ 552(a)(4)(B), 552a(g)(1), and 28 U.S.C. §§ 1331, 1346(a)(2). This matter is before the court on the FBI's renewed motion for summary judgment as to Falwell's denial of access claims under the Privacy Act, in Count I, and under FOIA, in Count II, as well as the FBI's motion to dismiss the remaining claims under the Privacy Act, in Count I, and the conspiracy claims, in Count III. Because the court finds that there are no genuine issues of material fact and that the FBI is entitled to judgment as a matter of law, the court will grant the FBI's motion for summary judgment as to Falwell's claims of denial of access to records under the Privacy Act and FOIA Additionally, because it finds that Falwell has failed to state any claims for which relief can be granted, the court will also grant the FBI's motion to dismiss Falwell's remaining claims under the Privacy Act and his conspiracy claims.

### I.

On August 26, 1999, plaintiff Dr. Jerry Falwell made written requests to the EOP and FBI under the FOIA and the Privacy Act for any documents that might pertain to him or any of the other named plaintiffs. The Office of the President responded by claiming that there was no statutory right to the records Falwell requested. The FBI acknowledged Falwell's request in a letter dated October 25, 1999. In another letter, dated September 29, 1999, the FBI stated that a search of the files in its Central Records System ("CRS") did not locate any record responsive to Falwell's request. Falwell filed an administrative appeal on November 30, 1999.

On January 20, 2000, Falwell filed suit in this court against the EOP and FBI. Falwell claimed that the EOP and FBI violated the Privacy Act (Count I), that the FBI violated FOIA (Count II), and that both defendants conspired to accomplish these violations (Count III). On April 14, 2000, the EOP filed a motion to dismiss Falwell's Privacy Act claim on the ground that the

Act does not apply to the Office of the President. On September 11, 2000, the court granted the EOP's motion to dismiss.

While the FBI's first search for documents did not uncover any records pertaining to Falwell, later searches did reveal such records. From October 1999 to September 2000, the FBI released documents to Falwell that it had found pertaining to him. The FBI first searched its Central Records System ("CRS") using its Universal Index and then conducted a more particularized search for documents using computer systems called Rapid Start–VAAPCON and VAAPCON Application.[1]

On September 25, 2000, the FBI moved for summary judgment with respect to Falwell's claims under Counts I and II, which allege that the FBI violated FOIA and the Privacy Act by denying him access to the documents that he had requested. The FBI also moved to dismiss Falwell's other claims for failure to state a claim for which relief can be granted. A hearing on the outstanding motions was held on January 31, 2001, and the court determined that the FBI should file a *Vaughn* index in support of its motion for summary judgment on Falwell's FOIA claim.[2] On April 6, 2001, the FBI filed its *Vaughn* index, a declaration by an FBI official explaining the contents of the *Vaughn* index, and a

renewed motion for summary judgment. Falwell responded to the FBI's renewed motion for summary judgment on June 27, 2001, claiming that the FBI still has failed to comply with the requirements of FOIA and the Privacy Act and urging the court to conduct an *in camera* review of the redacted and withheld documents.

## II.

The Freedom of Information Act requires that every agency of the federal government "upon any request for records ... shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3). However, Congress has set forth certain exceptions to this general rule of disclosure, realizing that "there are some government records for which public disclosure would be so intrusive—either to private parties or to certain government functions—that FOIA disclosure would be inappropriate." *Stern v. FBI*, 737 F.2d 84, 88 (D.C.Cir.1984). For example, FOIA excludes those documents that must be kept secret for national security purposes, those that would constitute an invasion of personal privacy if disclosed, and certain documents relating to law enforcement. 5 U.S.C. § 552(b)(1), (6), (7). The FBI claims that various documents relating to Falwell that it has in its possession are exempt from disclosure under

1. In 1994, the FBI began an investigation into violence against health care providers called VAAPCON (Violence Against Abortion Providers Conspiracy). Rapid Start VAAPCON and VAAPCON Application were internalized computerized sub-systems of the Central Records System. These computer sub-systems were used by the FBI as management tools to assist with the organization of information within the CRS. The court assumes that when Falwell refers to the VAAPCON database in his complaint, he means these computer sub-systems.

2. Courts have conceived various ways to give an agency the opportunity to justify its failure to disclose certain documents pursuant to FOIA, one of which is the *Vaughn* index, which has its origins in the case of *Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir.1973). Although there is no standard format for a *Vaughn* index, an agency submitting one must explain "why a particular exemption is relevant and correlat[e] those claims with the particular part of a withheld document to which they apply." *Mead Data Cent., Inc. v. United States Dep't of Air Force*, 566 F.2d 242, 251 (D.C.Cir.1977).

one or more of the above-mentioned exceptions.

■ Falwell has urged this court to conduct an *in camera* review of the redacted or otherwise withheld documents before making a determination as to the FBI's compliance with FOIA. *In camera* review is appropriate where the justifications for withholding are conclusory or not described in sufficient detail to demonstrate that the claimed exemption applies, or where there is evidence of agency bad faith such as where evidence in the record contradicts agency affidavits. *Carter v. United States Dep't of Commerce*, 830 F.2d 388, 392–93 (D.C.Cir.1987). In order for an agency to withhold information pursuant to this exception, the agency must fairly describe the contents of the material withheld and adequately state its grounds for nondisclosure. *Bowers v. Dep't of Justice*, 930 F.2d 350, 357 (4th Cir.), *cert. denied*, 502 U.S. 911, 112 S.Ct. 308, 116 L.Ed.2d 250 (1991). If those grounds are reasonable and consistent with the applicable law, the court should uphold the government's position. *Id.* Additionally, the court should accept the credibility of any affidavits, so long as there is no reason to question the good faith of the agency. *Id.* *See also Spannaus v. United States Dep't of Justice*, 813 F.2d 1285, 1289 (4th Cir. 1987).

■ Here, the FBI's *Vaughn* index has provided the court with a detailed analysis of each redaction and document withheld. The FBI did more than merely recite the statutory requirements for each exemption that it claimed. The FBI went into as much detail as possible to describe the contents of the documents in question without revealing the information that FOIA is designed to protect. It has provided the court with more than sufficient information to make a reasoned decision as to the FBI's compliance with FOIA, and

there is no evidence of bad faith on the part of the FBI. As a result, the court finds that there is no justification for an *in camera* review of the documents, as Falwell has requested, and will instead turn to an analysis of the FBI's compliance with FOIA.

■ First, the FBI claims that a single document is exempt from FOIA pursuant to Executive Order 12958, which pertains to the protection of national security information. FOIA allows an agency to exempt information from disclosure if the information is "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy. . . ." 5 U.S.C. § 552(b)(1). The FBI maintains that the public disclosure of this document would reveal information about one of the FBI's intelligence activities, thereby potentially compromising national security. Specifically, the FBI contends that if the contents of this document were made public, it would likely identify one of the FBI's intelligence sources because the information pertaining to that source is specific. It asserts that such a revelation could possibly cause damage to national security by allowing hostile entities to discover the criteria used for current intelligence or counterintelligence activities, as well as hamper the FBI's efforts to protect and recruit intelligence sources in the future. The court finds that the FBI has fairly described the contents of the material withheld and adequately stated its reasons for nondisclosure. Because the FBI's reasons for nondisclosure are entirely reasonable and consistent with FOIA, the court concludes that the FBI has properly withheld this document pursuant to 5 U.S.C. § 552(b)(1).

■ Next, the FBI seeks to protect "personnel and medical files and similar

files" and "information compiled for law enforcement purposes" in order to avoid an "unwarranted invasion of personal privacy," pursuant to 5 U.S.C. §§ 552(b)(6), (7)(C). In order to determine whether the disclosure of this information would constitute an unwarranted invasion of personal privacy, it is necessary to weigh the public interest in disclosure of the information against the privacy interests in the information. *Neely v. FBI*, 208 F.3d 461, 463–64 (4th Cir.2000) (citing *United States Dep't of Justice v. Reporters Comm. for the Freedom of the Press*, 489 U.S. 749, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989)); *United States Dep't of State v. Washington Post Co.*, 456 U.S. 595, 599–600, 102 S.Ct. 1957, 72 L.Ed.2d 358 (1982). "FOIA recognizes a public interest only in information bearing on 'an agency's performance of its statutory duties.'" *Neely*, 208 F.3d at 463–64 (quoting *Reporters Comm.*, 489 U.S. at 773, 109 S.Ct. 1468). The court should weigh this public interest against privacy interests such as "the potential for future harassment, annoyance, or embarrassment." *Id.* at 464–65.

The FBI claims that it properly withheld the names of FBI agents, other federal and local government employees, third-party suspects, and other third parties whose names appear in documents about FBI investigations relating to Falwell. After reviewing all of the relevant documents submitted by the FBI in its *Vaughn* index, the court finds that the FBI withheld no parts of documents other than those that it properly claimed were exempt under FOIA. Specifically, the court was able to discern the nature of the investigations because the FBI only withheld the names of people for whom it claimed exemptions and revealed the rest of the documents in full. Nearly all of the investigations conducted by the FBI were investigations in which *Falwell* was the victim of a crime. After reviewing all of the evidence, the court concludes that there is virtually no public interest in further revealing the names of those mentioned in the documents, and any information bearing on the FBI's performance of its statutory duties has been disclosed. In contrast, revealing the names of individuals mentioned in the documents could cause them future harassment, annoyance, or embarrassment by others, thereby violating their privacy. Consequently, the court finds that the privacy interests of the individuals whose information would be revealed outweighs the public's interest in full disclosure. Because the FBI's reasons for nondisclosure are entirely reasonable and consistent with FOIA, the court concludes that the FBI has properly withheld this information pursuant to 5 U.S.C. §§ 552(b)(6) and (7)(C). Accordingly, the court will grant the FBI's motion for summary judgment with respect to Falwell's FOIA claims.

### III.

The Privacy Act contains rules governing the access to, maintenance of, and dissemination of agency records pertaining to individuals. Falwell contends that the FBI illegally denied him access to records, illegally maintained records, and illegally disseminated records. The FBI claims that it complied with Falwell's requests, that it is exempt from many of the requirements of the Privacy Act, and that Falwell has not adequately plead violations of the Privacy Act. The court will address each of Falwell's Privacy Act claims in turn.[3]

---

**3.** The court agrees with the FBI's assertion that all plaintiffs other than Dr. Falwell are not "individuals" as defined by the Privacy

Act. 5 U.S.C. § 552a(a)(2). Accordingly, all other plaintiffs cannot, under any circum-

## A.

First, Falwell claims that the FBI refused to allow him access to records and information pertaining to him. Section 552a(d)(1) of the Privacy Act requires that each agency shall, "upon request by any individual to gain access to his record or to any information pertaining to him which is contained in the system, permit him ... to review the record and have a copy made of all or any portion thereof in a form comprehensible to him ..." 5 U.S.C. § 552a(d)(1). If an agency refuses to comply with an individual's request to gain access to records pertaining to him, the court may enjoin the agency from withholding the records and order the production of such improperly withheld records. 5 U.S.C. § 552a(g)(1)(B), (g)(3)(A). Additionally, a plaintiff who substantially prevails may be able to recover reasonable attorney's fees and litigation costs. 5 U.S.C. § 552a(g)(3)(B). Damages, however, are not recoverable in such an action. *Thurston v. United States*, 810 F.2d 438, 447 (4th Cir.1987). In an access case, once the agency produces the requested documents, the claim for relief becomes moot. *Biondo v. Dept. of Navy*, 928 F.Supp. 626, 631 (D.S.C.1995), *aff'd*, 86 F.3d 1148 (4th Cir.1996); *Regional Management Corp., Inc. v. Legal Services Corp.*, 186 F.3d 457, 464–465 (4th Cir.1999).

Here, the FBI produced documents to Falwell in response to his August 26, 1999 request. Falwell, however, complains that the overwhelming majority of the documents ultimately produced by the FBI were produced only after Falwell initiated this litigation in January 20, 2000. While this may be true, the fact that the FBI eventually produced the requested documents renders Falwell's claim for refusal to allow access moot.

Alternatively, the FBI claims that its Central Record System ("CRS") is exempt from the access requirements of the Privacy Act. While § 552a(d)(1) provides for general access to records, § 552a(j)(2) of the Privacy Act provides procedures by which an agency can deny individuals access to any system of records which is "maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws ... and which consists of ... (B) information compiled for the purpose of a criminal investigation. ..." To exempt a system of records from access under the Privacy Act, an agency must promulgate rules, pursuant to certain rulemaking requirements, and state in the rule the reasons why the system of records is to be exempt. *See Exner v. FBI*, 612 F.2d 1202, 1204 (9th Cir.1980). The Department of Justice Regulations found in 28 C.F.R. § 16.96 effectively exempt the FBI's Central Records System from certain requirements of the Privacy Act, including § 552a(d)(1), and give reasons for this exemption.[4] The FBI, then, had no legal obligation under the Privacy Act to allow Falwell access to the CRS records. *Ryan v. Dept. of Justice*, 595 F.2d 954, 956–57 (4th Cir.1979); *Exner*, 612 F.2d at 1204.

The court finds that the production of documents to Falwell under FOIA has sat-

stances, state a claim for Privacy Act violations.

4. The regulations give the following reasons for this exemption: "[I]ndividual access to records ... might compromise ongoing investigations, reveal investigatory techniques and confidential informants, and invade the priva-

cy of private citizens who provide information *in connection with a particular investigation.* In addition, exemption ... is necessary to protect the security of information classified in the interest of national defense and foreign policy." 28 C.F.R. § 16.96(b)(2)

isfied whatever obligation, if any, the FBI had to provide access to documents under the Privacy Act. Accordingly, the court grants the FBI's motion for summary judgment on Falwell's claim of denial of access under the Privacy Act.[5]

## B.

■ Next, Falwell claims that the FBI willfully and intentionally maintained a system of records on him in violation of the Privacy Act. Section 552a(e)(1) and section 552a(e)(7) of the Privacy Act pertain to the maintenance of records by government agencies. The court will address each of these sections in turn.

Under § 552a(e)(1) of the Privacy Act, an agency shall "maintain in its records only such information about an individual as is relevant and necessary to accomplish a purpose of the agency required to be accomplished by statute or by executive order of the President." An individual has standing to bring a civil action against the agency when the agency fails to comply with this provision in such a way as to have an "adverse effect" on the individual. 5 U.S.C. § 552a(g)(1)(D). The agency is liable for damages if the court determines that the agency acted in a manner which was "intentional or willful." 5 U.S.C. § 552a(g)(4). The Fourth Circuit has defined "intentional or willful" conduct as behavior that is somewhat greater than gross negligence. *Scrimgeour v. Internal Revenue*, 149 F.3d 318, 326 (4th Cir.1998) (The "standard for intentional or willful behavior under the Privacy Act has been articulated as 'an act committed without grounds for believing it to be lawful, or by flagrantly disregarding others' rights under the Act.").

Falwell alleges that the FBI intentionally and willfully maintained "confidential records" on him that were not relevant to accomplish any purpose required by statute or executive order of the President, but were instead used for the purpose of attacking or threatening attacks on Falwell. Falwell also alleges that as a result he has suffered economic and non-economic damages. For relief, Falwell seeks "compensatory damages" in an amount of not less than $1,000 pursuant to § 552a(g)(4)(A) of the Privacy Act.

Falwell, however, avers no facts to support these conclusory allegations. To survive a 12(b)(6) motion to dismiss, Falwell is not required to prove his case, but he must allege facts that, if proven, would sustain a Privacy Act claim. *See Caribbean Broadcasting System, Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080 (D.C.Cir.1998). While the court is bound to accept as true factual allegations in support of the complaint, the court is "not so bound by the plaintiff's legal conclusions, since the purpose of Rule 12(b)(6) is to test the legal sufficiency of the complaint." *Randall v. United States*, 30 F.3d 518, 522 (4th Cir.1994). "General conclusionary allegations unsupported by facts are insufficient to constitute a cause of action." *Jewell v. City of Covington*, 425 F.2d 459, 460 (5th Cir. 1970); *see also Harper v. United States*, 423 F.Supp. 192 (D.S.C.1976) (dismissing a Privacy Act claim on a 12(b)(6) motion because plaintiff failed to adequately plead an "adverse effect").

Falwell has failed to adequately plead factual allegations to support his maintenance claim under § 552a(e)(1) of the Privacy Act. He has not alleged what document "maintained" by the FBI was in violation of § 552a(e)(1). Thus, the

---

**5.** Since Falwell has not substantially prevailed in this case, his request for attorney's fees under § 552a(g)(3)(B) also fails.

court cannot know if this document was a "record" contained in a "system of records" and, thus, subject to the Privacy Act's provisions. *See* §§ 552a(a)(4) and (a)(5) (setting forth the definition of these terms). Falwell has not alleged facts to support his allegation that these records were not relevant to accomplish any purpose required by statute or executive order of the President. Additionally, Falwell has not alleged facts to support his allegation that he suffered any adverse effect. Even if it were assumed that the FBI maintained confidential information about Falwell in a system of records that is purportedly irrelevant to the FBI's mission, Falwell does not identify how he has been adversely affected. *See Crichton v. Community Services Administration*, 567 F.Supp. 322, 324–25 (S.D.N.Y. 1983) ("The mere existence of [a secret] file without a showing of adverse effect fails to make out a prima facie cause of action under § 552a(g)(1)(D)"). Furthermore, Falwell has not alleged facts to support his allegation that the maintenance of such records was willful and intentional.

■ Alternatively, pursuant to 5 U.S.C. § 552a(j)(2), the FBI has exempted its Central Records System from the provisions of § 552a(e)(1) and has provided reasons for this exemption.[6] *See* 28 C.F.R. § 16.96. The court finds that the provisions of § 552a(e)(1), which restrict the records that an agency can maintain, does not apply to the FBI's Central Record System. Thus, Falwell cannot state a maintenance claim under § 552a(e)(1) for which relief can be granted.

■ Section 552a(e)(7) of the Privacy Act also pertains to the maintenance of records. This section states that an agency shall "maintain no record describing how any individual exercises rights guaranteed by the First Amendment unless expressly authorized by statute or by the individual about whom the record is maintained or unless pertinent to and within the scope of an authorized law enforcement activity." 5 U.S.C. § 552a(e)(7). The FBI is not authorized under § 552a(j)(2) to exempt its records from this section. An individual must suffer an "adverse effect" to have standing to sue under this section, 5 U.S.C. § 552a(g)(1)(D), and in order to recover damages the agency must have acted willfully and intentionally, 5 U.S.C. § 552a(g)(4).

Although Falwell has alleged that the FBI maintains a database which is intended to violate his constitutional rights, he has not alleged enough facts to support a claim under § 552a(e)(7). In his complaint, Falwell did not allege what records violate § 552a(e)(7). Thus, the court cannot determine from the complaint whether such records, if they exist, are outside the scope of law enforcement activity. However, in his memorandum in opposition of the FBI's motion to dismiss, Falwell identifies one document which he claims describes how he exercises his constitutional rights in violation of § 552a(e)(7). This document, entitled "The New Right Humanitarians," was not published by the FBI; instead, it was obtained by the FBI pursuant to a counterintelligence investigation of the Communist Party USA.[7] Even if this

---

6. The FBI Regulations state that it is necessary to exempt the CRS from the provisions of § 552a(e)(1) because: it is not possible to determine the relevancy or necessity of information in the early stages of an investigation; it is only after information is assessed that its

relevancy and necessity can be established; and information collected pursuant to one investigation could be relevant to another investigation. 28 C.F.R. § 16.96

7. Shelia Horan, Deputy Assistant Director for Counterintelligence for the FBI, stated in her

document describes how Falwell exercises his First Amendment rights, it does not violate § 552(e)(7) of the Privacy Act because the document pertained to and was within the scope of a duly authorized FBI counterintelligence investigation. *See Nagel v. U.S. Department of Health, Education & Welfare,* 725 F.2d 1438, 1441 (D.C.Cir.1984) ("Maintenance of a record describing the exercise of First Amendment rights does not violate Section (e)(7) if the record is 'pertinent to and within the scope of an authorized law enforcement activity.' "). Furthermore, Falwell has not alleged facts to support his allegations that he suffered an adverse effect or that the FBI's actions were willful and intentional.

The court finds that Falwell's allegations that the FBI maintains records on him in violation of § 552a(e)(1) and § 552a(e)(7) fail as a matter of law. Falwell has not stated a claim under these provisions for which relief can be granted. Accordingly, the court grants the FBI's motion to dismiss Falwell's maintenance claims under § 552a(e)(1) and § 552a(e)(7) of the Privacy Act.

### C.

■ Falwell also alleges that the FBI willfully and intentionally used and disseminated information from this system of records to attack or threaten Falwell. Although Falwell claims that this violates § 552a(e)(1) of the Privacy Act (regarding the maintenance of records), the court construes the claim to be brought under § 552a(e)(6) or § 552a(b), which relate to unlawful disclosures. Section 552a(e)(6) provides that prior to disseminating a rec-

ord an agency must make reasonable efforts to assure that the records are accurate, complete, timely and relevant for agency purposes. Section 552a(b) sets forth other conditions for the disclosure of records by an agency. An individual must suffer an "adverse effect" to have standing to sue under this section, 5 U.S.C. § 552a(g)(1)(D), and in order to recover damages the agency must have acted willfully and intentionally, 5 U.S.C. § 552a(g)(4).

Again, Falwell has not alleged the proper factual predicate to support his allegation that the FBI disseminated records in violation of the Privacy Act. Falwell has not alleged what documents or records were disseminated by the FBI. There is nothing before the court to indicate that the FBI disseminated any records in violation of the Privacy Act. Furthermore, there are no facts to support allegations that Falwell suffered any adverse effect or that the FBI acted willfully and intentionally. Since Falwell has failed to state a claim for which relief can be granted, the court grants the FBI's motion to dismiss Falwell's dissemination claims.

### IV.

■ Finally, Falwell claims that the FBI conspired with the EOP to commit the previously alleged Privacy Act and FOIA violations, and tacitly or explicitly agreed to perform certain lawful acts in an unlawful manner. "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer,* 510 U.S. 471, 475, 114

---

declaration that this document "was pertinent to the FBI's authorized foreign counterintelligence investigation of the Communist Party–USA involving the World Peace Council, [and] concerns information obtained by [a classified] intelligence source ... In the course of reporting information, the source provided

voluminous documents to the FBI, such as [The New Right Humanitarians document] which provided insight as to the intentions, perspectives and overall methodology of the Communist Party–USA." Horan Declaration ¶¶ 5,6.

S.Ct. 996, 127 L.Ed.2d 308 (1994). Accordingly, there must be statutory authorization to sue a federal agency. Neither the Privacy Act nor FOIA provide a cause of action for conspiracy. *See* 5 U.S.C. §§ 552, 552a. Nor has Falwell cited any other statute or case that provides a basis for Falwell's conspiracy claim to go forward. Consequently, the court grants the FBI's motion to dismiss.

## V.

For the reasons stated, the court grants the FBI's motion for summary judgment as to Falwell's denial of access claims under FOIA and the Privacy Act. Additionally, the court grants the FBI's motion to dismiss as to Falwell's maintenance and dissemination claims under the Privacy Act and his conspiracy claim. The court will issue an appropriate order on this day.

## *ORDER*

In accordance with the Memorandum Opinion entered this day, it is hereby **ORDERED** and **ADJUDGED** that the FBI's motion for summary judgment as to Falwell's denial of access claims under the Privacy Act, in Count I, and under FOIA, in Count II, is **GRANTED,** and the FBI's motion to dismiss the remainder of Falwell's claims under the Privacy Act, in Count I, and his conspiracy claim, in Count III, is also **GRANTED.**

It is further **ORDERED** that the FBI is dismissed from this case as a defendant.